CURRENT v. PARKER.　(No. 7485.)*

(Court of Civil Appeals of Texas. San Antonio. Jan. 20, 1926. Rehearing Denied Feb. 17, 1926.)

1. Vendor and purchaser ☞45—That vendor was member of conspiracy to defraud purchasers held insufficient as matter of law to warrant cancellation of vendor's lien notes, where purchaser did not show that contract was result of conspiracy.

In suit by purchaser to cancel vendor's lien notes, it was not sufficient to show that vendor was member of conspiracy to defraud strangers by falsely representing land, and verdict was properly directed against purchaser where he failed to show that as result of such conspiracy he was induced to enter into the very contract in suit.

2. Vendor and purchaser ☞44.

Evidence, in suit by purchaser to cancel vendor's lien notes for fraud, held insufficient to show that false and fraudulent representations were made to purchaser concerning value and productivity of land.

Appeal from District Court, Hidalgo County; Hood Boone, Judge.

Separate suits by W. A. Current against Al. F. Parker, and by Al. F. Parker against W. A. Current, were consolidated, with Current assigned to position of plaintiff and Parker to position of defendant. Judgment for defendant, and plaintiff appeals. Affirmed.

Dawson, Henry & Walker, of Mission, for appellant.

Wm. S. West, of Brownsville, and McDaniel & Bounds, of McAllen, for appellee.

SMITH, J. In November, 1919, appellant, W. A. Current, purchased from one W. E. Stewart a tract of approximately 32 acres of land situated in Hidalgo county, for a consideration of $20,784, or about $385 an acre, half of which was paid in cash and the balance in vendor's lien notes, payable to Stewart, or his order. Subsequently Stewart assigned the notes to A. F. Parker, appellee herein.

In October, 1924, Current brought suit against Parker as the holder of said notes, alleging that Stewart, the vendor, and others, in pursuance of a conspiracy existing between them for that purpose, had deceived appellant into the purchase of said land, through false and fraudulent representations as to the merits and value thereof; that the

true value of the land at the time was only $10 an acre; and appellant set up failure of consideration to the extent of $19,480, with which he sought to set off the unpaid purchase-money notes, which he asked to be canceled. About the time that suit was filed, appellee, Parker, instituted suit against appellant for judgment and foreclosure upon the unpaid purchase-money notes, or, in the alternative, to recover title to the land. These two suits were consolidated, with Current assigned to the position of plaintiff and Parker to the position of defendant. At the conclusion of the trial, the court below directed a verdict for Parker, for whom judgment was rendered for title to the land. Current has appealed.

The case turns upon the question of whether or not appellant as the vendee was deceived into purchasing the land in dispute by material false and fraudulent representations of the vendor and his agents as to the merits and value of that land. Most of appellant's pleadings, proof, and brief are directed at an alleged conspiracy on the part of the vendor and his agents to bring persons from "Northern States" into the Rio Grande Valley and there deceive them into the purchase of lands in that region at exorbitant prices. It is true, as appellant vigorously contends, that allegations of conspiracy to defraud serve to open the doors to a wide range of evidence, and it appears from the record here that the trial court was extremely liberal in permitting appellant to fully exploit the privilege vouchsafed by that rule.

[1, 2] It is not deemed necessary to decide here whether or not appellant proved the existence of the general conspiracy charged by him against the vendor and his agents. Proof of the conspiracy, alone, would not have entitled appellant to recover. In order to show a cause of action, it is essential that appellant show not only the existence of a conspiracy, but he must go further, and show that this conspiracy operated directly upon him, and to his injury; that is to say, appellant could not complain in this cause of the existence of the alleged general conspiracy, unless it is made to appear that as a result thereof he was induced by fraudulent representations, made to him by the conspirators, to enter into the very contract he now seeks to modify on account of the alleged fraud. Appellant has made no such showing in the case, and the court properly directed a verdict against him.

We will analyze as briefly as possible the pleadings and proof, as they are set out in appellant's brief. Because of our conclusion that the evidence does not disclose that any fraud was practiced upon appellant in the sale to him of the land in dispute, it becomes unnecessary to set out the pleadings and testimony concerning the alleged conspiracy. Conceding that a general conspiracy was proven, as no injury is shown to have result-

ed to appellant from its operation, the fact of its existence becomes immaterial.

Upon the question of active fraud, appellant alleged that while a resident of the state of North Dakota he was induced by an agent of W. E. Stewart to accompany one of Stewart's homeseekers' excursions to the Rio Grande Valley "for the purpose of inspecting the lands" in that region with the view of purchase; that he with the other excursionists were met at the train at Llano Grande, in Hidalgo county, by Stewart's agents, and for two days were carried in automobiles over the valley, inspecting lands, improvements, and products; that on this trip of inspection many false and fraudulent representations were made to appellant concerning the value and productivity of the land, including that subsequently purchased by appellant. These representations were then set out with particularity in appellant's petition, and will be stated here in connection and comparison with the proof thereunder:

1. It was alleged that it was represented to appellant that—

"The average crop of alfalfa was approximately 16 tons per acre per annum, and that the average net yield of alfalfa was more than enough to pay for the purchase price of the land for each year's crop produced thereon."

The only evidence in the record of any representation made to appellant concerning alfalfa was the testimony of appellant that—

"One man there that night at the Club House told us he could cut from 10 to 15 tons per acre per year from alfalfa here."

Appellant did not know who that "one man" was, and no pretense was or is made that he was connected with appellee or was one of the conspirators; nor was any effort made to show whether the representation relative to alfalfa was true or false. Clearly, then, appellant cannot complain as to this item.

2. Appellant alleged that it was represented to him that the "average crop of corn grown upon the lands, and especially the lands purchased by him, was 75 bushels per acre." Under this allegation appellant testified that—

"A talk was made at a farm by Mr. Wade, if I remember right. He said you could raise from 70 to 100 bushels of corn to the acre."

To show the falsity of this representation, appellant put on two witnesses who testified that the average yield of corn was 40 bushels an acre, and another who testified that "75 to 125 bushels of corn per acre was not the average yield of corn in that section; * * * there were probably some corn crops that made that much, but it was not the average of the country, but there might have been a piece here and there that made that much." The representation claimed to have been made to appellant was not as to the

average yield, but what "could" be raised, as to which appellant's own witness, on direct examination, gave an estimate of 25 bushels per acre more than that represented to appellant. The charge of false representation as to corn was therefore refuted by appellant himself.

3. Appellant alleged that it was represented to him that the average crop of cabbage produced was 7 to 14 tons per acre, and the average price was $100 per ton. Under this allegation appellant testified that—

"Mr. Christener said that we could raise from 7 to 14 tons of cabbage per acre, and it would sell for from $40 to $100 per ton, and that there was always a good demand for them."

The only testimony offered to prove the falsity of this representation was that of the witness Peck, that "the average yield of cabbage has not been more than 5 tons to the acre." Obviously, the charge of fraud as to cabbage was not sustained.

4. Appellant alleged that it was represented to him that the average crop of onions was 500 crates an acre, and the average price $2 a crate. Under this allegation appellant testified that when the excursionists were being shown through the country they "stopped at a place where they were planting onions, and (an agent) made a sort of talk there; he said they were just getting out their onions; and he said they would raise as high as 500 crates to the acre and sell them for $3 a bushel. He did not say anything about the minimum crop of onions; he said that was what they had done." There was no evidence offered to show that this representation was false.

5. It was alleged by appellant that it was represented to him that the flat rate for water for irrigation of his land would be $4 per acre, and that it would not exceed $6 for all the water he wanted, and whenever he wanted it. Under this allegation, he testified to the representation as alleged and that "the first two years the rates for irrigation were just as represented to us, * * * and we got plenty of water the first two years," but that since then he had not gotten all the water he wanted "by a long ways"; that "the first year or so I never had to wait for more than a day or two until I got my water—I had no kick for the first year or so." Thus the charge of fraud under this count was not sustained.

6. Appellant alleged, finally, that for an additional consideration the vendor agreed to clear appellant's land and deliver it to him ready for cultivation by December 15, 1920, and that water for irrigating the land would be furnished in time for the early spring crop of that year, but that the land was not cleared until March and water was not furnished until April. The evidence under this allegation did not show actionable fraud, or injury resulting in damages to appellant.

We have thus disposed of the several charges of fraud by which appellant claimed in the evidence to have been induced to purchase the land involved. None of those charges were sustained by proof, and as all other contentions made by appellant depended upon the charge of fraud, the court below properly directed a verdict for appellee.

The judgment is affirmed.